IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACQUELYN S.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-01022-L-BT |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jacquelyn S. filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of the Social Security Administration (the "Agency"). The District Court referred the case to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. For the reasons explained below, the District Court should AFFIRM the Commissioner's decision.

**Background**

Plaintiff was born on October 1, 1955. Administrative Record 411 (A.R.) (ECF No. 11). She has a college education and past work experience as a data processing auditor and as an orderly. A.R. 52. In 2010, Plaintiff filed an application for a

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

period of disability and disability insurance benefits, alleging a disability onset date of October 3, 2008. A.R. 409-17. The Agency determined that the severity of Plaintiff's breast cancer equaled the requirements of Listing 13.10B in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 216 319-20, 325. Thus, the Agency determined she was disabled and entitled to benefits. Five years later, however, the Agency notified Plaintiff of its determination that she had experienced medical improvement and was no longer disabled as of April 1, 2015. A.R. 321-24, 328-30. Plaintiff requested an administrative hearing before an ALJ, which was held on February 1, 2017. A.R. 32-58. The ALJ issued a decision on March 2, 2017, finding that Plaintiff had experienced medical improvement and her disability ended on April 1, 2015. A.R. 14-24.[2]

Plaintiff appealed the ALJ's decision to the Appeals Council. A.R. 407-408. The Council affirmed. A.R. 1-7. Plaintiff then filed this action in federal district

---

[2] The regulations require the Commissioner to apply an eight-step evaluation process to determine if a claimant's disability and entitlement to benefits continues: (1) is the claimant engaged in substantial gainful activity; (2) does the claimant have an impairment or combination of impairments which meet or equals a listed impairment; (3) has there been medical improvement; (4) if there has been medical improvement, is it related to the claimant's ability to work; (5) if no medical improvement had been found, or if any medical improvement found was not related to the claimant's ability to work, are there any exceptions to the medical improvement standard of review; (6) if the claimant's medical improvement is related to the ability to do work, are the claimant's current impairments, in combination, "severe"; if the impairments are not severe, the claimant is no longer deemed disabled; if the impairments are severe, the evaluation continues; (7) does the claimant have sufficient residual functional capacity, despite impairments, to perform past relevant work; and (8) considering the claimant's residual functional capacity, age, education, and past relevant work, can the claimant can do other work. 20 C.F.R. § 404.1594(f)(1)-(8).

court, in which she argues the ALJ erred by: (1) failing to use the correct legal standard in deciding whether Plaintiff's impairments were "severe"; (2) failing to properly weigh medical source opinions in determining Plaintiff's residual functional capacity (RFC); and (3) finding that she can return to her past relevant work. As a result, Plaintiff contends the ALJ's determination that she is no longer disabled after April 1, 2015 is not supported by substantial evidence.

## Legal Standards

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923 ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'") (quoting *Perez*, 415 F.3d at 461). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392-93 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the

Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support his decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

**Analysis**

I.

In determining whether a claimant continues to be disabled, the factfinder must decide whether her current impairments are "severe." 20 C.F.R. § 404.1594(f)(6). Here, the ALJ determined that Plaintiff has the following severe impairments: moderate degenerative facet joint hypertrophy at L4-L5; minimal degenerative spondylosis L3-L4; mild degenerative facet joint hypertrophy at L3-L4, diabetes; emphysema/COPD; osteoporosis; left shoulder impingement; and morbid obesity. A.R. 16. The hearing decision explains the ALJ found these impairments to be severe because they "have more than a minimal limitation on the claimant's ability to perform basic work functions." A.R. 16. The ALJ further determined that Plaintiff's anxiety and depression are nonsevere because they "do not more than minimally limit her" and "do not cause more than minimal limitation in [her] ability to perform basic . . . work activities." A.R. 16-17. Plaintiff argues that the ALJ failed to apply the correct legal standard in deciding whether Plaintiff's impairments were severe.

In the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be

4

expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101, 1104-05 (5th Cir. 1985). Courts in this district consistently hold this standard, known as the *Stone* standard, provides no allowance for even a minimal interference with a claimant's ability to work. *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009); *see also Bownds v. Astrue*, 2011 WL 4091507, at *4 (N.D. Tex. July 19, 2011) (holding that an ALJ fails to apply the *Stone* standard by requiring "more than a minimal" effect on an individual's ability to work.); *Craaybeek v. Astrue*, 2011 WL 539132, at *6 (N.D. Tex. Feb. 7, 2011) (determining the "minimal effect" standard is "wholly inconsistent with *Stone*"); *Sanders v. Astrue*, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008) (remanding the case after finding that the ALJ's standard, which allowed for a finding of non-severity if the abnormality has only a minimal effect on the individual's ability to work, inconsistent with the *Stone* standard); *but see Flowers v. Berryhill*, 2017 WL 2257596, at *4 (N.D. Tex. Apr. 18, 2017) (finding "minimal effect" standard was not an improper statement of the law), *adopted by* 2017 WL 2225411 (N.D. Tex. May 22, 2017). Rather, the *Stone* standard requires a finding of "severe" if the impairment interferes with an individual's ability to work *at all*. *Stephanie Z. v. Berryhill*, 2018 WL 4467470, at *3 (N.D. Tex. Sept. 18, 2018) (citing *Scroggins*, 598 F. Supp. 2d at 805-06; *Morris v. Astrue*, 2012 WL 4468185, at *5 (N.D. Tex. Sept. 4, 2012)).

The Fifth Circuit held in *Stone* that it would assume the ALJ applied an incorrect standard to the severity requirement unless the correct standard is set

5

forth by reference to *Stone* or by an express statement that the construction the Fifth Circuit gives to the severity requirement is used. *Stone*, 752 F.2d at 1106. Nevertheless, "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Remand is only required "where there is no indication the ALJ applied the correct standard." *Id.* The Commissioner may overcome the presumption that the ALJ applied an incorrect severity standard by showing that, though not explicitly stated, the ALJ applied the correct legal standard or by demonstrating that the ALJ's application of an improper standard was harmless. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) ("Although the ALJ did not identify the specific applicable legal standard, we agree with the magistrate judge that the ALJ nevertheless applied the proper standard. While it is true that the ALJ never cited to *Stone . . .* , which provides the appropriate legal standard for determining the severity of the disability, procedural perfection is not required unless it affects the substantial rights of a party."); *see also Taylor v. Astrue*, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011) (citing *Cook v. Astrue*, 2010 WL 4628732 at *3 (N.D. Tex. Nov. 15, 2010), *adopted by* 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011); *Vaughn v. Astrue*, 2009 WL 3874607 at *5 (N.D. Tex. Nov. 17, 2009)). Because the ALJ did not cite to *Stone* and his articulation of the severity standard was inconsistent with *Stone*, the Court concludes the ALJ applied an incorrect standard to the severity requirement. No remand is required, however, because the error was harmless.

With respect to the ALJ's finding that Plaintiff's anxiety and depression are non-severe, Plaintiff argues remand is required because: (1) the record establishes that Plaintiff has been diagnosed with both impairments; (2) Plaintiff testified that she experiences symptoms of depression; and (3) Plaintiff's treating physician indicated that depression contributes to the severity of Plaintiff's symptoms and her functional limitations, A.R. 1951-52. However, as the ALJ noted in his decision, there is no evidence Plaintiff ever saw a psychologist, a psychiatrist, or a mental health counselor—despite being provided referrals for such providers and resources. A.R. 17, 1474. An ALJ may rely upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ further observed that the record did not contain any mental status examinations to demonstrate deficiencies in Plaintiff's mental status. A.R. 17. And, the ALJ relied on the Agency medical consultant's finding, based on the entire record, that Plaintiff did not have a severe mental impairment. A.R. 17, 970-83. In view of all the evidence, the Court finds Plaintiff has failed to demonstrate that the ALJ would have reached a different conclusion regarding Plaintiff's medical improvement and her ability to work if he had applied the correct standard to evaluate the severity of her mental impairments. Accordingly, the Court concludes that the ALJ's failure to apply the correct severity standard was a harmless error. If a *Stone* error is harmless, it is not reversible since "procedural perfection is not required, and an adjudication of the Commissioner is not to be vacated unless a substantial right of the claimant has been adversely affected," for "the major policy

underlying the harmless error rule is to preserve judgments and avoid waste of time." *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (brackets and internal quotation marks omitted) (citing *Mays,* 837 F.2d at 1364; *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 349 (5th Cir. 1983); *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519-20 (5th Cir. Unit A Jan. 1981)); *Taylor*, 706 F.3d at 603.

Plaintiff also argues that the ALJ improperly failed to find her alleged fibromyalgia is a severe impairment. Specifically, the ALJ determined Plaintiff's alleged fibromyalgia is not even a medically determinable impairment because she had not been diagnosed as having fibromyalgia by an acceptable medical source in accordance with the testing protocol required by Agency regulations. A.R. 18. Pursuant to Social Security Ruling 12-2p, fibromyalgia is a medically determinable impairment "when it is established by appropriate medical evidence." Social Security Ruling (SSR) 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012). The Ruling clarifies that a "physician's diagnosis alone" is insufficient, and that "[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* Under the Ruling, a claimant will be found to have a medically determinable impairment of fibromyalgia when, in addition to a diagnosis, a physician provides evidence to satisfy the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. See *Tebyanian v. Colvin*, 2015 WL 4475762, at * 7 (N.D. Tex. July 22, 2015) ("Ruling 12-2p offers two tests for determining

8

whether a claimant's fibromyalgia qualifies as a medically determinable impairment."). Under either test, a claimant must show: (1) a history of widespread pain "in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months;" and (2) evidence that other disorders that could cause symptoms and signs were excluded. In addition to these two requirements, under the first test, the claimant must also show at least 11 positive tender points during a physical exam. Under the second test, a claimant instead must show "[r]epeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." Plaintiff insists that several of her doctors diagnosed fibromyalgia and made observations of positive findings on tenderpoint evaluation, with complaints of diffuse myalgias, fatigue and low energy and that the UT Southwestern Rheumatology Clinic found that her symptoms are consistent clinically with fibromyalgia and musculoskeletal evaluations found point tenderness in several locations, an antalgic gait, and swelling of the right ankle, all together yielding an impression that she most likely has fibromyalgia, with point tenderness, chronic fatigue, and depressed mood, A.R. 1705-06. But Plaintiff does not point to any evidence in the record that she could satisfy the 1990 ACR Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria.

Thus, she has failed to demonstrate the ALJ erred in finding that her fibromyalgia is not a medically determinable impairment.

II.

On November 15, 2016, Plaintiff's treating physician, Maddie Kubiliun, M.D., completed a Physical Medical Source Statement, in which she opined Plaintiff's RFC is limited in that she can sit less than two hours and can stand and walk less than two hours; she needs unscheduled breaks during the workday; she can rarely lift less than ten pounds; she would be off task 20% of the time and would be absent from work more than four days per month. A.R. 1952–54. Plaintiff asserts these findings are consistent with similar findings by Jelani D. Ingram, M.D., a consultative examiner who examined Plaintiff on August 3, 2015, and opined that Plaintiff cannot perform activities within the range of sedentary work. A.R. 1165-70. The ALJ gave these opinions "little weight." A.R. 22. Plaintiff argues the ALJ failed to properly evaluate this medical opinion evidence.

With respect to claims filed before March 27, 2017, the ALJ must evaluate medical opinion evidence in the manner prescribed by 20 C.F.R. § 404.1527. Under § 404.1527(a)(1), "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Acceptable medical sources include licensed physicians—both medical and osteopathic doctors—and licensed psychologists. 20 C.F.R. § 404.1502(a)(1)-(2). A

treating source "means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). "A treating source's medical opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." *Bentley v. Colvin*, 2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (quoting 20 C.F.R. §§ 404.1572(c)(2), 416.927(c)(2); citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). But no special deference need be accorded treating source opinions when they are not accorded controlling weight. *Ida G. v. Berryhill*, 2019 WL 1386280, at *5 (N.D. Tex. Mar. 10, 2019), *adopted by* 2019 WL 1382073 (N.D. Tex. Mar. 27, 2019). ALJs are free to assign little or no weight to treating physicians' opinions for good cause. *Newton*, 209 F.3d at 455-56 (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)); Pl.'s Br. 26; Pl.'s Reply 2 (ECF No. 25). Good cause exists when "relative to other experts . . . the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456 (citing *Brown v. Apfel,* 192 F.3d 492, 500 (5th Cir. 1999); *Greenspan*, 38 F.3d at 237; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 107 (2000)).

Unless controlling weight is given to a treating source's opinion per § 404.1527(c)(2), an ALJ is to consider the following factors in determining the

weight to give to "any medical opinion": (1) the physician's examining relationship; (2) the nature and extent of the treatment relationship: length of treatment and frequency of examination; (3) the support a medical source presents for its opinion, in terms of objective evidence and explanation; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician; and (6) other factors, including a medical source's amount of understanding of "our disability programs and their evidentiary requirements." 20 C.F.R. § 404.1527(c). Medical sources other than treating sources do not carry the same "considerable weight," but they still must be considered. *See Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008) (per curiam) ("Wong performed a one-time consultative examination of Robinson and therefore is not due special deference as a treating physician."); *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

The Court finds the ALJ's decision reflects that he adequately analyzed the factors under 20 C.F.R. § 404.1527(c) before assigning "little weight" to Dr. Kubiliun's opinion. Plaintiff is correct that "'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).'" *Kneeland*, 850 F.3d at 760 (emphasis in original) (quoting *Newton*, 209 F.3d at 453) (noting that the regulation currently appears at 20 C.F.R. § 404.1527(c)(2)); Pl.'s Br. 20. *Kneeland* further counsels that "the regulations make clear that opinions from examining physicians must be

12

considered" and that "fundamentally, the ALJ cannot reject a medical opinion without explanation." *Kneeland*, 850 F.3d at 760 (citing *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979)) (internal quotation marks and brackets omitted).

Here, however, the ALJ explains his decision to give Dr. Kubiliun's opinion "little weight," and his explanation demonstrates that he considered § 404.1527(c)'s factors. The ALJ gave "little weight" to Dr. Kubiliun's opinion, because it was inconsistent with the medical evidence of record:

> The [ALJ] gives little weight to the treating source statement fro[m] Maddie Kubiliun, M.D., who opined that [Plaintiff] could not perform even sedentary work. The clinical finding [Dr. Kubiliun's] cited was that [Plaintiff[ requires oxygen supplementation for shortness of breath. However, a review of [other record evidence] shows [Plaintiff's] shortness of breath is of unclear etiology, most likely due to deconditioning or body habitus. Notably, the claimant did not have a loss of saturation while doing a walking test, which strongly shows that supplemental oxygen is not required. Further, the opinion that [Plaintiff] could not perform sedentary exertion is inconsistent with the many exams showing normal, strength, range of motion and gait.

A.R. 22. The ALJ also discussed findings by Michael Foster, M.D., a pulmonologist who assessed Plaintiff and opined that Plaintiff should "continuing exercising as much as she can and continue [physical therapy]." A.R. 21, 2046-55. It was further noted by the attending physician in the pulmonary care clinic, Dr. Fitzgerald, that Plaintiff did not "require" supplemental oxygen; Dr. Fitzgerald advised Plaintiff to lose weight. A.R. 21, 2056. This explanation indicates that the ALJ considered Dr.

Kubiliun's treatment relationship with Plaintiff; the support Dr. Kubiliun presented for her opinion, in terms of objective evidence and explanation; and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(1), (3)-(4). The ALJ also mentioned and cited to Dr. Kubiliun's treatment records, which evidences that he considered the nature and extent of the treatment relationship and Dr. Dr. Kubiliun's specialization. A.R. 22; 20 C.F.R. § 404.1527(c)(2), (5). It is clear, therefore, that the ALJ considered the regulatory factors when determining the weight to assign Dr. Kubiliun's opinion. Thus, while the ALJ perhaps could have expanded upon his analysis of § 404.1527(c)'s factors, procedural perfection is not required. *See Taylor*, 706 F.3d at 603 (citing *Mays*, 837 F.2d at 1364).

The ALJ's decision also shows that he considered and properly evaluated Dr. Ingram's opinions that Plaintiff cannot perform even sedentary work. The ALJ accurately summarized Dr. Ingram's findings and explained that he was giving them little weight because the findings were based on short term worsening and do not appear elsewhere in record. A.R. 22. The ALJ specifically noted the inconsistency between Dr. Ingram's opinion and other record evidence that "frequently described [Plaintiff] as having full strength, normal range or motion, and normal gait, especially after the summer of 2015 when she underwent PT." A.R. 22. Accordingly, the Court concludes that the ALJ did not err in assigning "little weight" to Plaintiff's medical source opinion evidence.

III.

The ALJ found Plaintiff not disabled because he determined Plaintiff could perform her past relevant work as a data processing auditor. A.R. 23. In making this determination, the ALJ relied on vocational expert (VE) testimony that a hypothetical person of Plaintiff's age, education, work experience, and functional limitations could work as a data processing auditor, as that job is "generally performed." A.R. 53. Plaintiff argues the ALJ erred in relying on the VE testimony because it is contrary to the requirements for the data processing auditor job that are reported by the supplement to the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO).[3] Specifically, Plaintiff makes a logic-based argument, as follows: (1) the ALJ found that Plaintiff can reach, push, and pull with the upper extremities up to two hours in an eight-hour workday—or 25% of the workday; (2) the DOT description for the data processing auditor job, DICOT 160.162-030, 1991 WL 647252, states that the job requires "occasional" reaching; (3) the DOT defines "occasionally" to mean that the "activity or condition exists up to one-third of the time;" (4) therefore, if Plaintiff can only reach 25% of the time and her past work

---

[3] The Department of Labor promulgated the DOT to provide "standardized occupational information to support job placement activities." *See* Dep't of Labor, D.O.T. at xv (4th ed. 1991). The DOT, along with the SCO, contains descriptions of the requirements for thousands of jobs in the national economy and classifies those jobs based on various factors.

15

requires reaching up to one-third of the time, she lacks the capability to perform the requirements of her past relevant work. Pl.'s Br. 16 (ECF No. 14).

Occupational evidence provided by a VE generally should be consistent with the occupational information supplied in the DOT. SSR 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). But the DOT does not include every specific skill qualification for a particular job. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). And the Fifth Circuit has warned against giving DOT job descriptions a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job. *See id.* A direct conflict between VE testimony and the DOT may arise when the VE's testimony concerning the exertional or skill level of a job is facially different from the description of the job found in the DOT. *Id.* When a "direct and obvious conflict" exists between the DOT and the VE's testimony, the ALJ must explain or resolve the conflict. *Id.* If the ALJ does not resolve the conflict, the weight of the VE's testimony is lessened such that reversal and remand for lack of substantial evidence usually follows. *Id.* at 146. On the other hand, when a conflict is implied or indirect, the ALJ can accept and rely upon the VE's testimony provided the record reflects an adequate basis for doing so. *See id.* at 146; *see also Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 613 (E.D. Tex. 2009) (affirming Commissioner's decision to rely on VE testimony despite implied conflict where adequate evidence supported VE testimony).

Here, there is no conflict—direct or indirect—between the VE's testimony and the DOT. The ALJ, VE, and Plaintiff's counsel engaged in an extensive discussion at the hearing regarding the requirements of Plaintiff's past relevant work and whether she could return to her job as a data processing auditor. A.R. 52-57. First, the ALJ asked VE to describe Plaintiff's past relevant work. A.R. 52. The VE identified one of Plaintiff's past jobs as "data processing auditory, DOT number 160.162-030, SVP: 7, skilled, exertion level is sedentary, however she performed it at a medium level." A.R. 52. The ALJ posed the following hypothetical to the VE:

> ALJ: Let's assume a hypothetical individual of [Plaintiff's] age and education with the past jobs as described, skills as described. Let's assume a hypothetical individual can lift and carry 10 pounds. The [hypothetical individual] can stand and walk alternatively for a total of two hours per day with sitting occurring intermittently throughout the remaining six hours of the day. *The [hypothetical individual] can reach, push, and pull with the upper extremities up to two hours per eight-hour day.* The [hypothetical individual] can use hands for grasping, holding, and turning objects up to six hours per eight-hour day. The [hypothetical individual] can never ascend or descent [sic] ropes, ladders, scaffolds, or stairs, The [hypothetical individual] must avoid concentrated exposures to fumes, odors, dust, gasses, and machinery hazards. Can this hypothetical individual perform the past work as described, either as actually performed, or generally performed?
>
> VE: Could return as generally perform[ed], but not as she performed it.
>
> ALJ: Which job?

17

| | |
|---|---|
| VE: | To the data processing auditor at sedentary. |

A.R. 53 (emphasis added). The VE also testified that her testimony was "consistent with the DOT." A.R. 54. Plaintiff's counsel then questioned the VE as follows:

| | |
|---|---|
| Counsel: | I would like to change the Judge's hypothetical question number one to assume that reaching and handling with the left upper extremity is limited to occasional only. Would that have any adverse effect on performance of [the hypothetical individual's] past work? |
| VE: | Reaching and handling, you mixed them together, you're wanting to do the hands and arms together? I'm lost with what you're doing here. |
| Counsel: | Okay, *reaching occasionally—the upper extremity is limited in that reaching is restricted to occasionally* and handling restricted to occasionally. How would that affect – |
| ALJ: | Okay, *so you reduced handling to two hours?* |
| VE: | Yes, that would not affect the past work at sedentary. |
| ALJ: | *I have reaching with both extremities two hours which is occasional*, six hours on the handling. |
| Counsel: | I apologize, hang on a second. Yeah, reaching, pushing, pulling, up to two hours. And I didn't see anything for handling – handling up to six hours.<br><br>So, I'm reducing handling to two hours a day. |
| VE: | It's at an occasional level? |
| Counsel: | And that would have no effect? |
| VE: | Correct. |

A.R. 55-56. This exchange establishes that the VE's testimony that a hypothetical claimant with Plaintiff's RFC, including a limitation that she can only perform reaching activities occasionally, could return to her job as a data processing auditor is consistent with the DOT description for that job. Plaintiff's attempt to manufacture a conflict based on the ALJ's use of the phrase "up to two hours per eight-hour day" rather than the term "occasional" is unavailing. The hearing transcript establishes that the VE, the ALJ, and Plaintiff's attorney understood "occasional" to mean up to two hours. The Court does not find that the ALJ erred in relying on the VE testimony.

### Recommendation

After reviewing the hearing decision and the administrative record, the Court finds that although the ALJ failed to recite the correct standard for determining whether Plaintiff's impairments were severe, the error was harmless; the ALJ did not err by failing to detail his analysis of the factors under 20 C.F.R. § 404.1527(c) when weighing medical source opinions; and the ALJ's finding that Plaintiff can return to her past relevant work is supported by substantial evidence. Therefore, the hearing decision should be AFFIRMED in all respects.

Signed August 27, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).